ROLAND L. BELSOME, Judge.
 

 hThe defendant, Samuel Scott, was indicted on two counts of second-degree murder.
 
 [1]
 
 He pled not guilty to both counts at his arraignment. The two counts were severed; the court found probable cause; and it denied a motion to suppress identification with regard to Count One.
 

 Trial commenced on Count One and the jury returned a verdict of guilty to the lesser included offense of manslaughter. The defendant was sentenced to forty years at hard labor without benefit of parole, probation or suspension of sentence.
 

 Trial Testimony
 

 NOPD homicide Detective Gregory Hamilton was the lead investigator on this case. He found the victim’s body in the rear yard of 1502 France Street. The detective noted an obvious gunshot wound to the victim’s head and a bullet wound to one of the victim’s hands. As Hamilton surveyed the crime scene for evidence, he discovered a trail of blood, which was consistent with the victim’s body being dragged from the front porch to the back yard. Detective Hamilton recovered several spent bullet casings near the front of the house. From conversations with Igwitnesses, Hamilton developed the defendant as the shooter in this case. One of the witnesses, Regina Journee, positively identified the defendant as the man who pointed a gun at her and shot the victim. Detective Hamilton obtained a warrant for the defendant’s arrest and issued a crime bulletin in connection with the shooting.
 

 Dr. Paul McGarry, forensic pathologist with the Orleans Parish Coroner’s Office, determined that the victim suffered four gunshot wounds. The fatal shot was delivered to the left side of the victim’s head at point blank range. Dr. McGarry opined that the injury to the victim’s fourth finger of his left hand was a defensive wound because portions of the finger bone were lodged in the head wound.
 

 
 *286
 
 Regina Journee was the victim’s ex-girlfriend. On the night of March 4, 2005, Ms. Journee was standing on the corner of Robertson and France Street talking to some friends. She saw the victim jump out of his brother’s car and run toward her. She ran onto the porch of the house at 1500 France Street. The front door was locked so she jumped from the porch, ran down the alley and hid under the house. She ran because she feared the victim would hit her, as he had done in the past.
 

 The victim pulled her from under the house and accused her of seeing other boys while he was in jail. The pair sat on two chairs in the alley to talk. As the couple spoke, the defendant came from the 1502 France Street back door pointing a gun at them, and he asked what they were doing in his backyard. The defendant grabbed the victim by his shirt and ordered Ms. Journee to leave the area. As she |3ran away, she heard three gunshots. She ran to a nearby house and called the police. Later that night, the police took her to the station where she identified the defendant’s picture from a photo lineup as the man who held a gun on her and the victim.
 

 Jason Egana and John Blandin were the victim’s brothers. On March 4, 2005, the three brothers drove to Ms. Journee’s residence on Robertson Street. The victim saw Ms. Journee standing on the corner talking to friends and exited the car. Jason drove the ear around the corner twice and then parked where the victim had gotten out of the ear. Jason noticed the victim sitting on the porch of the house at 1502 France Street. Jason and John called to the victim to come home with them. As the victim got up to leave, a man, who was standing in front of the victim on the porch, shot him. The shot spun the victim around. When the shooter shot the victim a second time, the victim jumped off the porch and ran down the alley with the shooter chasing him. Jason and John drove to the police station and reported the incident.
 

 The brothers accompanied the police officer in his car and returned to the shooting scene. Jason and the policeman ran down the alley. Jason proceeded to the backyard of the France Street residence and found the victim lying underneath the house. Jason told the police that the shooter wore his hair in twists and made an in-court identification of the defendant as the man who shot the victim.
 

 John Blandin, recounted the events of March 4, 2005, corroborating Jason Ega-na’s account of what happened that day. Blandin remained at the police station while Jason Egana returned to the shooting scene with the police.
 

 The defendant testified that on March 4, 2005, he was at home talking to his mother when he heard a loud bang on the side of his house. He heard a woman |4scream, which startled him and his mother. The defendant retrieved his gun from his bedroom and went out the back door to investigate. The defendant walked around to the alley on 1500 France Street and saw a female with her back to the house and the victim standing in front of her. The defendant told the female to leave. As she did so, the defendant walked the victim to the front of the house. They jumped onto the front porch. The defendant told the victim to leave. The victim turned toward the defendant and grabbed the defendant’s gun. The defendant backed away and scuffled with the victim over the gun. The defendant’s arm hit the house, and he fired two shots. He pushed the victim off and fired a third time. The victim fell into the alley. The defendant admitted shooting the victim but said he did not mean for it to happen. After the shooting, the defen
 
 *287
 
 dant moved the victim from the alley to the backyard.
 

 ERRORS PATENT
 

 A review of the record reveals an error in sentencing. The docket master and minute entry indicate that the sentence is to be served without benefit of parole, probation or suspension of sentence; however, the sentencing transcript makes no such restrictions.
 

 La. R.S. 14:31 provides that a person convicted of manslaughter “shall be imprisoned at hard labor for not more than forty years.” There is no prohibition against parole, probation or suspension of sentence.
 
 [2]
 
 However, La. C. Cr. P. article 893 provides that persons convicted of violent offenses listed in La. R.S. |b14:2(B)(4) (manslaughter) are to be denied the benefit of probation and suspension of sentence.
 

 The trial court is ordered to amend the pertinent documents in the record to reflect the change. Moreover, the clerk of court is directed to toansmit the corrected documents to the officer in charge of the institution to which the defendant has been sentenced. La. C. Cr. P. art. 892(B)(2). See,
 
 State ex rel. Roland v. State,
 
 2006-0244 (La.9/15/06), 937 So.2d 846.
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 The defendant first argues that the trial court erred by refusing to give the defense requested jury instruction regarding defense of others.
 

 The trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors reasonably could infer from the evidence. La. C. Cr. P. art. 807;
 
 State v. Johnson,
 
 438 So.2d 1091, 1097 (La.1983). Article 807 further provides that a timely “requested special charge must be given to the jury if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.” The refusal to give a requested special charge does not warrant reversal of a defendant’s conviction unless it prejudices substantial rights of the accused. La. C. Cr. P. art. 921;
 
 State v. Marse,
 
 365 So.2d 1319, 1324 (La.1978);
 
 State v. Lipscomb,
 
 99-2094, p. 5 (La.App. 4 Cir. 7/3/2002), 823 So.2d 425, 428.
 

 The trial judge in this case refused to give the jury charge requested by the defendant relative to defense of others, because the evidence did not support the assertion. The record reflects that Ms. Journee testified that the victim had not hit her or given her any reason to fear him as they spoke in the alley. In fact, she ^testified that she feared for her safety only after the defendant pointed the gun at her and told her to run. Therefore, the evidence did not support the trial court giving the requested charge. There was no error on the part of the trial court.
 

 ASSIGNMENT OF ERROR NUMBER 2
 

 Secondly, the defendant contends that the evidence is insufficient to support a conviction for manslaughter. The defendant argues that the evidence suggests a case of negligent homicide because the State failed to prove that the defendant
 
 *288
 
 had the general intent to kill or inflict great bodily harm on the victim.
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 
 State v. Neal,
 
 2000-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657 (citing
 
 State v. Captville,
 
 448 So.2d 676, 678 (La.1984)).
 

 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”
 
 Neal,
 
 2000-0674, p. 9, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial, must be sufficient under
 
 Jackson
 
 to prove guilt beyond a reasonable doubt to a rational jury.
 
 Id.
 

 |7In this case, the defendant was charged with second-degree murder but convicted of manslaughter.
 
 [3]
 
 An appellate court will not reverse a jury’s return of a responsive verdict, as long as the evidence is sufficient to support a conviction for the charged offense.
 
 State ex rel. Elaire v. Blackburn,
 
 424 So.2d 246, 248 (La.1982).
 
 [4]
 

 La. R.S. 14:30.1(A)(1) provides:
 

 A. Second degree murder is the killing of a human being:
 

 (1) When the offender has a specific intent to kill or to inflict great bodily harm;
 

 The defendant herein argues that the State failed to prove that he had the general intent to kill or inflict great bodily harm. La. R.S. 14:31(A)(1) defines manslaughter in pertinent part as:
 

 A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed ...
 

 “Sudden passion” and “heat of blood” have been found not to be separate elements of the offense, but are mitigating factors that may show less culpability than when a homicide is committed without them.
 
 State v. Lombard,
 
 486 So.2d 106, 110 (La.1986). Provocation is a question of fact to be determined by the trier of fact. In order to be entitled to the lesser verdict of manslaughter, a defendant is required to
 
 *289
 
 prove mitigatory factors by a preponderance of the evidence.
 
 Id.
 
 at 111.
 

 | RSpecific criminal intent is a state of mind, and, as such, need not be proven as fact but may be inferred from the circumstances and the actions of the accused.
 
 State v. Hart,
 
 2004-0121, p. 8 (La.App. 4 Cir. 8/18/04), 881 So.2d 1237, 1242. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person.
 
 State v. Bridgewater,
 
 2000-1529, p. 8 (La.1/15/2002), 823 So.2d 877, 910.
 

 The evidence in this case shows that the defendant stated that he armed himself with a gun before exiting his residence. He also admitted that he shot the victim. Additionally, Ms. Journee stated that she witnessed the defendant grab the victim by the shirt and point a gun in his face. The fact that the defendant armed himself, pointed a gun in the victim’s face and intentionally fired on the defendant is sufficient to show the defendant’s intent to kill or inflict great bodily harm on the victim. We find the assignment to be without merit.
 

 ASSIGNMENT OF ERROR NUMBER 3
 

 In his final assignment, the defendant argues a conviction by a non-unanimous jury is unconstitutional. The defendant argues the trial judge erred in accepting the non-unanimous jury verdict as legal. He maintains that, in light of recent jurisprudence, La. C. Cr. P. art. 782 and La. Const, art. I, § 17 (providing for jury verdicts of 10 to 2 in cases in which punishment is necessarily confinement at hard labor) violate the Sixth and Fourteenth Amendments of the United States Constitution. Thus, the defendant argues the 10-2 jury verdict is unconstitutional. | ¡¡He cites to numerous United States Supreme Court cases to support his contention.
 
 [5]
 

 This Court has recently sought an opinion from the Louisiana Supreme Court on this question of law. As such, we will pretermit a discussion of the constitutionality of a non-unanimous jury verdict.
 

 CONCLUSION
 

 For the reasons discussed, the defendant’s conviction is affirmed and the trial court is ordered to amend the sentencing transcript in accordance with this opinion.
 

 AFFIRMED.
 

 [1]
 

 . Count one concerned the March 4, 2005, death of Jonathan Egana, which is the subject of this appeal, while count two pertains to the August 14, 2004, death of Terry Foucha. On May 20, 2009, the State amended count two to manslaughter, and the defendant pled guilty as charged. The court sentenced him to forty years at hard labor, concurrent to his existing sentence. This plea and sentence are not the subject of this appeal.
 

 [2]
 

 . La. R.S. 14:31 states that when the victim was killed as a result of a battery and tinder the age of ten years, the person convicted of manslaughter of the victim shall be imprisoned without the benefit of probation or suspension of sentence for at least ten years but not more than forty years. However, that provision is not applicable in the present case as the victim was over the age of ten.
 

 [3]
 

 . La. C. Cr. P. art. 814 provides an exclusive list of responsive verdicts to second-degree murder, which are: guilty, guilty of manslaughter, and not guilty.
 

 [4]
 

 . Because lesser and included grades of the charged offense are "those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged .... the evidence which would support a conviction of the charged offense would necessarily support a conviction of the lesser and included offense."
 
 Stale ex rel. Elaire v. Blackburn,
 
 424 So.2d at 248-249 citing
 
 Stale v. Cooley,
 
 260 La. 768, 257 So.2d 400 (1972)).
 

 [5]
 

 .
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);
 
 Ring
 
 v.
 
 Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002);
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 12(3 S.Ct. 2348, 147 L.Ed.2d 435 (2000);
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); and
 
 U.S. v. Booker,
 
 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).