ROLAND L. BELSOME, Judge.
| ¾ Defendant, Bobby Johnson, was charged with theft of property in excess of $500 in relation to two construction contracts he entered into with the victim, Eva Griffin. Under the initial contract, Defendant agreed to build Ms. Griffin a steel frame home, which she would pay for in five installments. Ms. Griffin paid the first installment of $73,926.00 on July 31, 2008, and Defendant informed her that the money would be held in an escrow account. The parties entered into a second contract in January of 2009[1] because the original general contractor was no longer on the job.
The record indicates that the plans for the home were not completed until March of 2009 and that no construction was done on the property until April of 2009 when Michael Garrett (one of the two new general contractors) of Golden Hammer Construction drove pilings and laid the concrete foundation for the home. When Mr. Garrett requested payment, the Defendant informed him that he had to contact Ms. Griffin for payment, and Ms. Griffin subsequently wrote the Defendant a check for $44,295.00 — $44,000.00 of which was then given to Mr. Garrett. Mr. Garrett then sent the Defendant a reimbursement check in the amount |2of $10,716.69, and he subsequently testified that the money was intended for Ms. Griffin. However, the *1059 Defendant deposited the money into his business account. On May 12, 2009, Defendant corresponded with Ms.' Griffin in regards to starting construction on her home, and he also stated that the steel for the construction of the house would be delivered within the next week. The steel was never delivered, and the Defendant did not begin building the house. Ms. Griffin testified that the Defendant assured her that the steel would be delivered in a timely manner and that he would pay the steel manufacturer from the money in escrow, but he subsequently confessed to spending the $73,926.00.
Ms. Griffin terminated Defendant’s involvement with the financial portion of constructing her home by email on June 11, 2009. In the same email, she asked Defendant to return the $73,926.00 by June 19. On June 12, 2009, the Defendant emailed Ms. Griffin promising to return her money.[2] Ms. Griffin and the Defendant both testified that in another email, dated July 30, 2009, the Defendant stated: “I never intended to steal anyone’s money. I will not rest until I give it back.”[3] At one point, the Defendant sent Ms. Griffin a cashier’s check for approximately $1,200.00, but Ms. Griffin found it insulting and returned the check. Ms. Griffin also testified that no other work was done on her house after Mr. Garrett completed the slab.
The Defendant testified that he did not steal Ms. Griffin’s money and that he believed he could use the $73,926.00 to start the project.[4] The Defendant said that he intended to repay Ms. Griffin whatever he owed her but that he did not believe |:ihe owed her the full amount.[5] He further testified that he did not admit to stealing Ms. Griffin’s money in his emails, rather he claimed that he was just apologizing for how long it was taking to complete the project.[6]
Mr. Johnson was found guilty, after a trial by jury, of theft of property in excess of $500. He was sentenced to serve five years and six months at hard labor, suspended, and placed on active probation for the same time period with restitution as a condition of probation. The trial court set the restitution amount at $52,886.80, to be paid in sixty monthly installments.
Errors Patent
It appears that the Defendant’s sentence is illegal in that he was sentenced to an excessive probationary period. The *1060 Defendant was placed on active probation for ñve years and six months; however, the maximum probationary period authorized by La.C.Cr.P. Art. 893 is five years.[7] La.C.Cr.P. Art. 894.4 permits a judge to extend the period of a defendant’s probation until monetary obligations are extinguished.[8] The trial court should have placed the Defendant on probation for five years and revisited the issue at a later time to determine if he needed additional time to satisfy his monetary obligation. This Court has authority under La.C.Cr.P. Art. 882 to correct an illegal sentence despite the failure of either party [4to raise the issue in the district court or on appeal.[9] Nonetheless, this Court has also recognized that the language of La.C.Cr.P. art. 882 is permissive. See, La. R.S. 15:801.1; State v. Green, 93-1432, p. 6 (La.App. 4 Cir. 4/17/96); 673 So.2d 262, 267; see also, State v. Johnson, 05-425, p. 8 (La.App. 5 Cir. 12/27/05); 920 So.2d 878, 883.
Assignment of Error
The Defendant’s sole assignment of error is that the evidence was insufficient to support his conviction. This Court, in State v. McMillian, set forth the following standard of review for determining whether evidence is sufficient to support a conviction: “an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier to fact could have found the defendant guilty beyond a reasonable doubt.” State v. McMillian, 2010-0812, p. 5 (La.App. 4 Cir. 5/18/11); 65 So.3d 801, 804 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Furthermore, “when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.” State v. McMillian, supra, p. 6, 65 So.3d at 804 (citing State v. Shapiro, 431 So.2d 372 (La.1982)). Finally, the determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Butler, 322 So.2d 189, 193 (La.1975), and a “factfin-der’s credibility decision should not be disturbed unless it is clearly contrary to the evidence.” State v. Huckabay, 2000-1082, p. 33 (La.App. 4 Cir. 2/6/02); 809 So.2d 1093,1111.
liiThus, in order for a defendant’s conviction to be upheld on appeal, the State must have proven the following essential elements beyond a reasonable doubt: 1) that the defendant misappropriated or took by means of fraudulent conduct, practices, or representations; 2) a thing of value; 3) that belonged to another; and 4) that the defendant had the intent to deprive the owner permanently of that which was misappropriated or taken. La. R.S. 14:67(A); State v. Nicholas, 97-1991, p. 20 (La.App. *1061 4 Cir. 4/28/99), 785 So.2d 790, 800; State v. Pittman, 368 So.2d 708, 710 (La.1979).
On appeal, the Defendant contends the State failed to prove that he intended to permanently deprive Ms. Griffin of the money she paid him in connection with the construction contracts. He argues that his emails and his attempt to negotiate the balance and repay Ms. Griffin with the cashier’s check demonstrate that he intended to pay back the amount owed.
Theft is a crime of specific intent. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. Further, specific intent is a legal conclusion to be resolved by the fact finder. State v. Graham, 420 So.2d 1126 (La.1982).
Viewing all of the evidence in a light most favorable to the prosecution, a rational trier of fact could conclude that the Defendant intended to permanently deprive Ms. Griffin of money owed to her. Prior to deliberating, the jury heard testimony from the victim, two of the Defendant’s business associates, and the Defendant. Ms. Griffin testified that she paid a total of $118,221.00 for the |6Pefendant to build her home, but that other than the concrete slab, no work was performed.
The jury also heard testimony from Ms. Griffin and the Defendant about several emails between the two. The jury obviously rejected the Defendant’s hypothesis of innocence regarding his intent to repay Ms. Griffin. As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness, State v. Jones, 537 So.2d 1244, 1249 (La.App. 4 Cir.1989), and its determination will not be disturbed unless it is “clearly contrary to the evidence.” State v. Vessell, 450 So.2d 938, 943 (La.1984).
A review of the evidence and testimony does not suggest that the jury’s decision to convict the Defendant was irrational or contrary to the evidence. The record establishes that Ms. Griffin paid the Defendant a large sum of money to build her a new home that was never completed. The record also shows that the Defendant used a portion of the funds to keep his business operational, and it further demonstrates that despite the Defendant’s “intention” to repay Ms. Griffin, he failed to do so. This evidence is sufficient for a reasonable trier of fact to conclude that the Defendant intended to permanently deprive Ms. Griffin of money owed to her in excess of $500.00.
For the reasons discussed, the Defendant’s conviction is affirmed and his sentence is vacated. The case is remanded to the trial court for resentencing in accordance with La.C.Cr.P. Art. 893(A).
CONVICTION AFFIRMED; SENTENCE VACATED; AND REMANDED.

. Ms. Griffin signed the second contract in April of 2009.

. “Mrs. Griffin I am sorry for all of this and did not plan for it to happen this way. I am committed to making it right ... My goal is to make a personal loan to cover the money that you paid out to my company and give it back to you. I am also seeking a larger Line Of Credit from [Liberty Bank] to have another resource to cover your balance.”

. Defendant also said that he was going to borrow the money from his 84-year-old mother.

. He said he did not understand what escrow meant.

. He stated: “[s]omewhere between $30,000.00 that she should get back from the standpoint I’m not to profit anything except the expenses that I had to pay to keep the business operational. And that's because I didn't finish the contract.” This indicates that he used some of the $73,926.00 to maintain his business. Ms. Griffin also contests the majority of the expenditures listed in a document prepared by the Defendant indicating that he paid out a total of $125,569.00 towards the construction of the home.

.Defendant did admit that he deposited the check for $10,716.69 from Mr. Garrett into his bank account rather than reimbursing Ms. Griffin. He stated that he did not later attempt to refund the money because, when Ms. Griffin returned the $1,200.00 cashier's check, he thought she only wanted the full $73,929.00. He also admitted to using the $10,716.69 to keep his company operational.

. La.C.Cr.P. Art. 893(A) states: “When it appears that the best interest of the public and of the defendant will be served, the court, after a first or second conviction of a noncapi-tal felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law ... The period of probation shall be specified and shall not be less than one year nor more than five years.”

. La.C.Cr.P. Art. 894.4 states: "When a defendant has been sentenced to probation and has a monetary obligation, including but not limited to court costs, fines, costs of prosecution, and any other monetary costs associated with probation, the judge may extend the period of probation until the monetary obligation is extinguished.”

.La.C.Cr.P. Art. 882(A) states: "An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.”