STATE OF LOUISIANA     *     NO. 2022-KA-0849

VERSUS     *

HARRISON J. BETHLEY     *     COURT OF APPEAL

    FOURTH CIRCUIT

    *    

    STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 549-606, SECTION "G"
Judge Nandi Campbell,
* * * * * *
**Judge Tiffany Gautier Chase**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Jason R. Williams
District Attorney
Brad Scott
Assistant District Attorney, Chief of Appeals
Mithun B. Kamath
Assistant District Attorney
619 South White Street
New Orleans, LA 70119

     COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Kevin V. Boshea
Attorney at Law
2955 Ridgelake Drive, Suite 207
Metairie, LA 70002

     COUNSEL FOR DEFENDANT/APPELLANT

       **CONVICTIONS AFFIRMED;
SENTENCES AFFIRMED AS
AMENDED
JUNE 21, 2023**

Harrison Bethley (hereinafter "Mr. Bethley") appeals his convictions and twenty-year concurrent sentences for manslaughter and obstruction of justice. After consideration of the record before this Court, and the applicable law, we affirm Mr. Bethley's manslaughter conviction and amend his sentence to remove the prohibition of probation and suspension of sentence. We also affirm his conviction and sentence for obstruction of justice.

## FACTS AND PROCEDURAL HISTORY

On February 21, 2020, Darnel Thomas (hereinafter "Mr. Thomas") and his family traveled to his grandmother's residence. Upon arrival, Mr. Thomas was involved in a physical altercation with his cousin, Mr. Bethley. During the altercation, the firearm that Mr. Thomas was carrying discharged twice with one of the bullets killing Mr. Thomas. After the altercation, Mr. Bethley fled the scene with the firearm. He was apprehended approximately three weeks later.

Detective Michael Poluikis (hereinafter "Detective Poluikis"), the lead investigative detective in this case, responded to the scene of the homicide. Multiple witnesses were interviewed and identified Mr. Bethley as the perpetrator.

1

A camera across the street from the residence captured Mr. Bethley leaving the scene. Detective Poluikis testified that upon examination of the scene, multiple bullet holes were located. He further stated that he was unable to locate the firearm used in the homicide.

On August 18, 2020, Mr. Bethley was charged by grand jury indictment with second-degree murder, a violation of La. R.S. 14:30.1; obstruction of justice, a violation of La. R.S. 14:130.1; and possession of a firearm by a felon, a violation of La. R.S. 14:95.1.[1] Mr. Bethley retained Martin E. Regan. Jr. (hereinafter "Mr. Regan"), of Regan Law P.L.C., to represent him in this matter. Stavros Panagoulopoulos (hereinafter "Mr. Panagoulopoulos") ultimately represented Mr. Bethley due to the health issues and ultimate death of Mr. Regan. Additionally, Anthony Angelette, Jr. served as co-counsel and signed the motion to enroll on behalf of Regan Law P.L.C.

A three-day jury trial commenced on March 15, 2022, at the conclusion of which the jury found Mr. Bethley guilty of manslaughter and obstruction of justice. On May 11, 2022, the trial court sentenced Mr. Bethley to twenty years on the manslaughter conviction, without the benefit of probation, parole or suspension of sentence. This sentence was later amended to reflect that the sentence was to be served without the benefit of probation or suspension of sentence. Mr. Bethley was also sentenced to twenty years, to run concurrently, on the obstruction of justice conviction. On August 23, 2022, Mr. Bethley filed a motion to reconsider sentence that was denied by the trial court. On September 1, 2022, he filed a "motion for

---

[1] On March 14, 2022, the State of Louisiana (hereinafter "the State") dismissed the charge of possession of a firearm by a felon against Mr. Bethley.

new trial and motion for judgment notwithstanding verdict," which was also denied by the trial court. This appeal followed.

## DISCUSSION

Mr. Bethley asserts nine assignments of error: (1) the verdict of guilty of manslaughter is contrary to the law and the evidence; (2) the defendant was denied his Sixth Amendment right to counsel; (3) the district court erred in the denial of the motion for new trial; (4) the State failed to prove cause of death by legally competent evidence; (5) the imposition of twenty year sentences at hard labor one of which is without benefit of parole, probation or suspension of sentence was unconstitutionally excessive and unduly harsh; (6) the district court respectfully erred in the denial of the motion to reconsider sentence; (7) the verdict of guilty of obstruction of justice is contrary to the law and the evidence; (8) the district court erred in the denial of the motion for judgment notwithstanding the verdict; and (9) the defendant was convicted before an improperly constituted jury in violation of due process of law. For ease of discussion, we will consider each assignment of error under its relevant topic.

### *Assignments of Error One, Three, Four, Seven and Eight*

#### Sufficiency of the Evidence

In his assignments of error one, four and seven, Mr. Bethley attacks the sufficiency of the evidence in two respects. First, he argues that there is insufficient evidence to support his convictions for manslaughter and obstruction of justice. Second, he maintains that the State failed to meet its burden of proof that Mr. Thomas' death was not a result of self-defense. By assignments of error three and eight, Mr. Bethley also asserts the trial court improperly denied his "motion for new trial and motion notwithstanding the verdict" based on the same insufficient

3

evidence arguments. We first determine whether sufficient evidence exists to support the convictions of manslaughter and obstruction of justice. *State v. Hearold*, 603 So.2d 731, 734 (La. 1992) ("When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal… .").

Pursuant to *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court must determine that the evidence, viewed in the light most favorable to the prosecution, "was sufficient to convince a rational trier of fact that all the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 2000-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657 (citations omitted). The statutory test of La. R.S. 15:438 "works with the *Jackson* constitutional sufficiency test to evaluate whether all the evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." *Id*.

This Court has previously set forth the applicable standard of review for sufficiency of the evidence:

> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Green*, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305 (La. 1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the

4

fundamental protection of due process of law. *Mussall*; *Green*; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." *State v. Smith*, 600 So.2d 1319 (La. 1992) at 1324.

*State v. Huckabay*, 2000-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111.

### *Self-Defense*

Mr. Bethley does not dispute that he fatally shot Mr. Thomas, rather he argues that he acted in self-defense and thus his actions were legally justified. Mr. Bethley testified that upon exiting his grandmother's residence, Mr. Thomas used profanity towards him and spat on him, at which point the altercation ensued. He stated that during the altercation, Mr. Thomas reached for his firearm and they both fell to the floor. Mr. Bethley testified that they were fighting over possession of the firearm as Mr. Bethley was attempting to remove Mr. Thomas' hand off the weapon. During this struggle, the weapon fired and struck Mr. Thomas.

A homicide is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20(A)(1). "In a homicide case in which the defendant asserts he acted in self-defense, the State has the burden of establishing beyond a reasonable doubt that the defendant did not act in self-defense." *State v. Kirk*, 2011-1218, pp 6-7 (La.App. 4 Cir. 8/8/12), 98 So.3d 934, 939-40 (citing *State v. Taylor*, 2003–1834, p. 7 (La. 5/25/04), 875 So.2d 58, 63).

The fact that Mr. Thomas was carrying a firearm on the day of the incident is undisputed. As such, this Court is tasked with determining whether Mr. Bethley

5

was justified in gaining possession of the firearm and shooting Mr. Thomas. While self-defense is a legal justification to homicide, La. R.S. 14:21 provides that:

> A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

Thus, if a person acts as the aggressor and provokes the situation, he may be precluded from claiming self-defense. *State v. Loston*, 2003-0977, p. 9 (La.App. 1 Cir. 2/23/04), 874 So.2d 197, 204.

In the case *sub judice*, two witnesses testified that they witnessed Mr. Bethley initiate the fight with Mr. Thomas.[2] Marsha Thomas (hereinafter "Ms. Thomas"), the victim's sister, testified that Mr. Thomas and his family arrived at their grandmother's residence so that Lenora Lewis (hereinafter "Ms. Lewis"), the victim's girlfriend, could style her hair. Ms. Thomas opened the door to greet them, at which point Mr. Bethley forcefully ran from inside the residence and attacked Mr. Thomas on the porch. She further testified that Mr. Bethley was shouting profanity at Mr. Thomas and saying, "I know you got that [expletive] burner on you," while running toward him.[3] Ms. Thomas heard two gunshots but never saw anyone with the firearm. She also stated that she did not see Mr. Thomas draw his firearm toward Mr. Bethley.

Ms. Lewis testified that upon arrival to the grandmother's residence, herself, Mr. Thomas and their children exited the vehicle and entered the porch area of the residence. She stated that when Ms. Thomas opened the door she saw Mr. Bethley

---

[2] Mr. Thomas' four minor children, who were present during the incident, were interviewed by the New Orleans Children's Advocacy Center the night of the homicide. They also stated that Mr. Bethley initiated the altercation.

[3] A "burner" is a colloquialism for "firearm" or "gun."

running towards Mr. Thomas and he started "swinging on [Mr. Thomas]." She further testified that the two began to struggle and ultimately ended up inside of the residence. Ms. Lewis stated that during the altercation she witnessed Mr. Bethley gain control of the firearm, and during her retreat she heard two gunshots.

"[A] jury is free to accept or reject, in whole or in part, the testimony of any witness." *State v. Johnson*, 2011-1513, p. 6 (La.App. 4 Cir. 9/5/12), 99 So.3d 1057, 1061. The jurors in this case chose not to believe Mr. Bethley's claim of self-defense. The evidence supports the determination that Mr. Bethley was the aggressor and initiated the confrontation with the victim, without Mr. Thomas drawing his weapon or posing a threat. Mr. Bethley started the physical altercation before Mr. Thomas had an opportunity to enter the residence. Thus, the determination that Mr. Bethley was the aggressor is reasonably supported by the evidence. It is not the duty of this Court to assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. *State v. Trosclair*, 443 So.2d 1098, 1106 (La.1983). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved beyond a reasonable doubt that the defendant's conduct was not justified.

### *Manslaughter*

The State charged Mr. Bethley with second-degree murder pursuant to La. R.S. 14:30.1 and the jury found him guilty of the responsive verdict of manslaughter. *State v. Smith*, 2011-0664, p. 1 (La.App. 4 Cir. 1/30/13), 108 So.3d 376, 379; *see* La. C.Cr.P. art. 814 A(4). Mr. Bethley argues that there is insufficient evidence for his conviction of manslaughter because the State failed to prove that the killing was not the result of self-defense. As stated above, we find

7

that the State met its burden of proof that Mr. Bethley was not justified in killing Mr. Thomas. Notwithstanding, the evidence was sufficient to find Mr. Bethley guilty of manslaughter. "An appellate court will not reverse a jury's return of a responsive verdict, as long as the evidence is sufficient to support a conviction for the charged offense." *State v. Scott*, 2009-0138, p. 7 (La.App. 4 Cir. 11/18/09), 26 So.3d 283, 288.

Second-degree murder is defined as "the killing of a human being…when the offender has a specific intent to kill or to inflict great bodily harm… ." La. R.S. 14:30.1(A)(1). The responsive verdict of manslaughter is defined as:

(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection…; or

(2) A homicide committed, without any intent to cause death or great bodily harm.

La. R.S. 14:31.

"Sudden passion" and "heat of blood" are mitigating factors, which demonstrate less culpability than if a murder is committed without those factors. *Scott*, 2009-0138, p. 7, 26 So.3d at 288. "In order to be entitled to the lesser verdict of manslaughter, a defendant is required to prove mitigatory factors by a preponderance of the evidence." *Scott*, 2009-0138, p. 7, 26 So.3d at 288-89 (citing *State v. Lombard*, 486 So.2d 106, 111 (La. 1986)). "Specific criminal intent is a state of mind, and, as such, need not be proven as fact but may be inferred from the circumstances and the actions of the accused." *Scott*, 2009-0138, p. 8, 26 So.3d at 289.

The evidence sufficiently establishes that Mr. Bethley initiated the altercation with Mr. Thomas thus intending to inflict great bodily harm. Additionally, he admitted to shooting the victim. Ms. Thomas and Ms. Lewis both testified to witnessing Mr. Bethley run towards Mr. Thomas and attack him, without Mr. Thomas drawing his weapon or threatening Mr. Bethley. Based on the record before this Court, the evidence is sufficient to find that Mr. Bethley intended to inflict great bodily harm, which is part of the definition of second-degree murder. The evidence is therefore sufficient to find him guilty of the lesser-included offense of manslaughter.

### *Obstruction of Justice*

Mr. Bethley argues that insufficient evidence exists to convict him of obstruction of justice because the State cannot definitively prove that Mr. Bethley removed the firearm from the crime scene. La. R.S. 14:130.1 pertinently defines obstruction of justice, as:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or U.S. law enforcement officers.

La. R.S. 14:130.1(A)(1)(a). "Specific intent [to commit obstruction of justice] need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant." *State v. Harvey*, 2021-0730, p. 10 (La.App. 4 Cir.

9

5/25/22), 345 So.3d 1043, 1050, writ denied, 2022-00953 (La. 9/20/22), 346 So.3d 803.

Mr. Bethley argues that there is no evidence that he removed the firearm from the crime scene. We find this argument unpersuasive as Mr. Bethley testified that he left the scene of the crime with the firearm used in the commission of the crime. Additionally, the evidence establishes that a firearm was not located at the scene of the crime and never recovered by law enforcement. During his testimony, when questioned about the whereabouts of the firearm, Mr. Bethley evasively responded to the question and never provided a direct answer. Thus, it is reasonable to infer that Mr. Bethley left the scene of an incident, with the firearm, that he knew would be the subject of a criminal investigation. Viewing the evidence in the light most favorable to the prosecution, specifically, the undisputed fact that Mr. Bethley fled the scene with the firearm, a rational trier of fact could have found, beyond a reasonable doubt, that Mr. Bethley obstructed justice by tampering with evidence. *See State v. Powell*, 2015-0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728 (removal of weapon from the scene of the shooting sufficient to support obstruction of justice conviction).

For the reasons fully articulated above, we find sufficient evidence exists to find Mr. Bethley guilty of manslaughter and obstruction of justice.

### *Motion for New Trial and JNOV*

On September 1, 2022, Mr. Bethley filed a "motion for new trial and motion for judgment notwithstanding the verdict," which was denied by the trial court on October 4, 2022. In his motion, Mr. Bethley argues that the State lacked sufficient evidence to sustain a conviction for manslaughter. Mr. Bethley was sentenced on May 11, 2022, and received his amended sentence on May 13, 2022. Based on the

10

record before this Court, the motion was properly denied because it was filed after sentencing. He did not file his motion for new trial until September 1, 2022. Pursuant to La. C.Cr.P. art. 853, a motion for new trial must be filed prior to sentencing unless new and material evidence exists. The exception is not applicable and therefore, Mr. Bethley's motion for new trial was untimely. Although his motion for new trial asserts the verdict is contrary to the law and evidence, that is not one of the exceptions outlined in La. C.Cr.P. art. 853. Additionally, as we have already determined in this opinion, sufficient evidence exists to convict Mr. Bethley of manslaughter and obstruction of justice. Accordingly, the trial court did not err in denying his "motion for new trial and motion for judgment notwithstanding the verdict."

*Assignment of Error Two*

## Right to Counsel

Mr. Bethley argues that his Sixth Amendment right to counsel was violated because, Mr. Regan, the attorney he hired did not represent him at trial. He maintains that although he hired Mr. Regan to represent him at trial, he was actually represented by Mr. Panagoulopoulos. The Louisiana Constitution provides, in relevant part, that "[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice… ." La. Const. art. I, § 13. The Sixth Amendment to the United States Constitution also guarantees this right:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

"Although the Sixth Amendment primarily guarantees the right to effective counsel, it also includes the right to select and be represented by counsel of choice." *State v. Brown*, 2003-0897, p. 11 (La. 4/12/05), 907 So.2d 1 (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1696, 100 L.Ed.2d 140 (1988)). However, our Supreme Court has provided that "[a]bsent a justifiable basis, '[t]here is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications.'" *State v. Johnson*, 2019-02004, p. 6 (La. 12/1/20), 314 So.3d 806, 810 (quoting *State v. Leggett*, 363 So.2d 434, 436 (La. 1978)).

Mr. Bethley first objected to his representation by Mr. Panagoulopoulos during the pre-trial hearing the morning of trial.[4] Mr. Bethley stated that when he went to Regan Law P.L.C., he was informed that Mr. Panagoulopoulos would handle pre-trial matters and Mr. Regan would be his counsel at trial. Mr. Panagoulopoulos noted that once Mr. Regan was no longer allowed to practice law, he assumed responsibility for all cases on behalf of Regan Law P.L.C. Mr. Panagoulopoulos stated that Mr. Bethley was made aware that Mr. Regan was put on interim disability, inactive status and that he would continue to handle the case moving forward. Mr. Bethley acknowledged that when he was present in court and notified about the trial date, he understood that Mr. Panagoulopoulos would be representing him at trial. Further, when questioned by the trial court, he affirmatively answered that he was aware that Mr. Panagoulopoulos would be his trial counsel and that no one else had ever appeared on his behalf.

---

[4] The docket master reflects that trial was scheduled to begin March 14, 2022. The trial court heard pre-trial matters on this date and recessed after concluding those matters. Trial resumed the following day, March 15, 2022.

The record reflects that Mr. Panagoulopoulos was the only attorney who made pre-trial appearances and signed post-indictment pleadings on behalf of Mr. Bethley.[5] Mr. Regan never appeared or signed a pleading on Mr. Bethley's behalf. Further, Mr. Bethley was aware that Mr. Panagoulopoulos would be representing him at trial as Mr. Panagoulopoulos had made all appearances in this matter and met with Mr. Bethley on multiple occasions. Based on the record before this Court, no justifiable basis exists for Mr. Bethley to request new counsel of choice the morning of trial. Accordingly, we find no violation of Mr. Bethley's Sixth Amendment right to counsel.

### *Assignments of Error Five and Six*

### <u>Excessive Sentence</u>

By these assignments of error, Mr. Bethley maintains that the twenty year concurrent sentences imposed for the manslaughter and obstruction of justice convictions are unconstitutionally excessive in violation of La. Const. art. I § 20. Mr. Bethley argues that the evidence does not support the imposition of the sentences. As such, he argues that the trial court erred in denying his motion to reconsider sentence.

The Louisiana Supreme Court has provided guidance when evaluating a claim of excessive sentence. Specifically, the Court held:

> Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that "[n]o *law* shall subject any person to … *excessive … punishment*." (Emphasis added). Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or

---

[5] Anthony Angelette, Jr. signed the motion to enroll and appeared as co-counsel at Mr. Bethley's trial.

constitutes nothing more than needless infliction of pain and suffering. *State v. Bonanno*, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Cann*, 471 So.2d 701, 703 (La. 1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. (internal citations omitted).

*State v. Smith*, 2001-2574, pp. 6-7 (La. 1/4/03), 839 So.2d 1, 4. *See also State v. Carter*, 2013-0074, p. 15 (La.App. 4 Cir. 12/11/13), 131 So.3d 153, 163. We will review this matter to determine whether the sentence imposed is grossly disproportionate to the severity of the crime committed and whether the trial court abused its vast discretion in imposing Mr. Bethley's sentence.

La. R.S. 14:31(B) provides that "[w]hoever commits manslaughter shall be imprisoned at hard labor for not more than forty years… ." When reviewing a claim that a sentence is excessive, our Court must determine whether the trial court adequately complied with the statutory guidelines in La. C.Cr.P. art. 894.1 and whether the facts of the case warrant the sentence imposed. *State v. Rouser*, 2014-0613, p. 18 (La.App. 4 Cir. 1/7/15), 158 So.3d 860, 872 (citation omitted).[6] "If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of the case… ." *Id.*, 2014-0613, p. 18, 158 So.3d at 872–73.

In imposing half of the maximum sentence allowed for a manslaughter conviction, the trial court acknowledged that Mr. Bethley had not committed any prior violent crimes and that the jury likely did not believe that the killing was

---

[6] La. C.Cr.P. art. 894.1 is entitled "Sentencing guidelines; generally."

intentional. However, the trial court noted that Mr. Bethley had not apologized to his family for killing his cousin, Mr. Thomas. The evidence also establishes that Mr. Bethley was the aggressor in the altercation with Mr. Thomas. Accordingly, the record before this Court does not support the conclusion that the sentence imposes punishment grossly disproportionate to the severity of the offense.

Regarding the sentence for the obstruction of justice conviction, La. R.S. 14:130.1(B)(2) provides that whoever commits the crime of obstruction of justice, when the obstruction of justice "involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period of less than a life sentence may be imposed, the offender may be…imprisoned for not more than twenty years at hard labor… ." The trial court stated the following:

> As it relates to the obstruction of justice, I am sentencing you – the sentencing range is 0 to 20 years. I am going to sentence you to the max because…you didn't stay and call the police;… you left the house with the gun and we still don't know where it is… .

Mr. Bethley testified that he left the scene with the firearm and went to a friend's restaurant to use the friend's telephone. Once that attempt was unsuccessful, he was able to use the telephone of a former co-worker. After that telephone call, Mr. Bethley contacted another friend and evaded law enforcement for approximately three weeks before he was arrested. After reviewing the record and applicable law, we find that based on the nature of the underlying crime and the steps taken by Mr. Bethley in an attempt to avoid law enforcement, the trial court did not abuse its broad sentencing discretion in imposing the maximum sentence for obstruction of justice.

*Assignment of Error Nine*

## <u>Improper Jury Venire</u>

By this assignment of error, Mr. Bethley argues that he was convicted before an improperly constituted jury in violation of La. C.Cr.P. art. 401(A)(5), which provides:[7]

> In order to qualify to serve as a juror, a person shall meet all of the following requirements:
>
> 5. Not be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service.

Mr. Bethley relies on *State v. Preston*, 2023-0039 (La.App. 4 Cir. 1/19/23) (unpublished decision) for his contention that the Orleans Parish Jury Commissioner failed to update the jury qualifications on the jury summons once La. C.Cr.P. art. 401(A)(5) was amended to allow prospective jurors with felony convictions older than five years. However, *Preston* is procedurally distinguishable from the case *sub judice*. In *Preston*, the defendant timely filed a motion to quash the jury venire, which Mr. Bethley failed to do in this matter. At no point during trial was an objection lodged about the improper jury venire composition. Mr. Bethley is therefore barred from raising the issue for the first time on appeal. *See* La. C.Cr.P. art. 841(A); *see also State v. Armentor*, 2019-1267, p. 12 (La.App. 1 Cir. 7/31/20), 309 So.3d 762, 771-72, *writ denied*, 2020-01032 (La. 2/17/21), 310 So.3d 1149 (citation omitted) ("[T]he defendant did not file such a pretrial motion to quash and did not raise the issue before *voir dire* began. …Consequently, the

---

[7] La. C.Cr.P. art. 401(A)(5) was amended in August 2021, prior to this date the statute provided, in pertinent part, "[n]ot be under indictment for a felony nor have been a convicted of a felony for which he has not been pardoned by the governor."

defendant's claim of a defective jury venire is not properly before this court… .").
Accordingly, this assignment of error lacks merit.

## ERRORS PATENT REVIEW

A review of the record reveals one errors patent. On May 13, 2022, the trial court amended Mr. Bethley's twenty year sentence regarding his manslaughter conviction, to reflect that the sentence was to be served without the benefit of probation or suspension of sentence. However, La. R.S. 14:31, the manslaughter statute, does not prohibit eligibility for parole, probation or suspension of sentence unless the victim is under the age of ten. La. R.S. 14:31(B). Mr. Thomas, the victim in this case, was over the age of ten thus, it was error for the trial court to impose the sentence without benefit of probation or suspension of sentence. Accordingly, we amend Mr. Bethley's sentence for manslaughter to remove the prohibition of probation or suspension of sentence.

## CONCLUSION

After a thorough review of the record, we affirm Mr. Bethley's manslaughter conviction and amend his sentence to remove the prohibition of probation and suspension of sentence. We also affirm Mr. Bethley's conviction and sentence for obstruction of justice.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED**