673 So.2d 262 (1996)
STATE of Louisiana
v.
Joseph GREEN.
No. 93-KA-1432.
Court of Appeal of Louisiana, Fourth Circuit.
April 17, 1996.
Harry F. Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for State of Louisiana.
*263 M. Craig Colwart, New Iberia, for Defendant.
SCHOTT, C.J., and PLOTKIN and WALTZER, JJ.
PLOTKIN, Judge.
The primary issues to be resolved in this appeal relate to defendant's sentences. Of considerable importance is whether an illegal sentence can be reviewed as an error patent or must be preserved for review by a motion to reconsider the sentence.
On November 27, 1991, Joseph A. Green was charged by bill of information with the July 9, 1991 armed robbery and attempted second degree murder of Roy Franklin Ham in violation of La.R.S. 14:64, 14:27(30.1). He pleaded not guilty at arraignment on December 9, 1991. On January 19, 1993, a twelve-member jury found him guilty of armed robbery and attempted manslaughter. On April 23, 1993, he was sentenced to serve fifty years at hard labor without benefit of parole, probation, or suspension of sentence as a second offender under La.R.S. 15:529.1 for armed robbery and concurrently to serve ten and one-half years at hard labor without benefit of parole, probation, or suspension of sentence for attempted manslaughter. Green appeals his conviction and sentence.
At the two-day trial, Roy Franklin Ham, a Naval aviator instructional mechanic, testified that on July 9, 1991 at approximately 11 p.m. he left work at the air station in Belle Chase. On the way home, Ham stopped at a Texaco gas station on General DeGaulle. He pumped his gas and paid the cashier by credit card. As he returned to his car he saw a man crouching by his rear left tire. This man asked him for spare change and Ham replied that he only had enough for toll. Ham walked around the man and entered his car (tossing his wallet onto the floorboard). As Ham closed the car door, the man approached the driver's window, put a gun in Ham's face, and demanded money. The man became angry and loudly demanded more money after Ham gave him his only dollar. Ham became frightened and grabbed the gun by the barrel with his left hand while starting the car with his right hand and shouting for help. The man pulled the gun from him, stepped backwards, and shot him in the face. Ham crawled out of his car and toward the gas station. The cashier helped him inside and called the police. Ham identified photographs of his car. Ham testified that he identified Green as the man who shot him from photographic and physical line-ups. As a result of the shooting Ham is permanently blind in his left eye. Ham's wallet has been missing since the shooting. Ham identified Green in court.
Officer Shelita Butler testified that she was dispatched to a Texaco station at 3054 General DeGaulle. When she arrived she found the victim lying in front of the cashier station in a pool of blood. The EMS unit arrived at the same time and began treating the victim while Officer Butler and her partner canvassed the area for witnesses. She briefly questioned the victim, who appeared delirious, while accompanying him to the hospital in an ambulance. The victim told her that a black male who had approached him for money shot him the face. Officer Butler interviewed Mary St. Clair, the cashier, whose account of the shooting was consistent with the victim's.
Mary St. Clair testified that she worked as cashier at the Texaco on General DeGaulle on July 9, 1991. She drew the station layout on a blackboard for the jury. St. Clair testified that after Ham paid for his gas with an American Express card and returned to his car she saw a black male leaning over into his car whom she assumed was a panhandler. St. Clair had taken care of the next customer and exited the station to tell the panhandler to get off the lot when she heard a gunshot. She ducked down and pulled another customer by the arm into the station. St. Clair was returning for this customer's children when Ham, who was bleeding from below his eye, exited his car and stumbled toward the station. She took Ham by the arm, pulled him into the station, locked the doors, and dialed 911, while blood streamed from Ham's face. St. Clair identified photographs of Ham's car and the crime scene.
Detective Robert Heindel testified that he performed a follow-up investigation of the scene of the shooting. He learned there *264 were three declined charges on Ham's stolen credit card. One charge was declined at a Howard Johnson Hotel. Detective Heindel identified a guest registration card signed by "R. Franklin" that was refused in connection with this denied charge. He obtained a description of two black males who had tried to obtain a room at the Howard Johnson. He learned that Ham's credit card was used the morning after the robbery to purchase two twelve-packs of beer and a carton of cigarettes at a Time Saver from a clerk who became suspicious and wrote down a license plate number. He learned from the Sentry Motel that a man, who signed his name "R. Franklin" on the guest registration card, had charged two rooms in the early morning after the robbery. Detective Heindel found the rooms empty and obtained a log of telephone calls made from the rooms. Detective Heindel identified the guest registration card from the Sentry Motel, a credit card receipt for the room, and the list of numbers called from the rooms. Detective Heindel testified that one number, which was frequently called, was registered to Troy Green Ware. Detective Heindel found the car described by the Time Saver clerk outside Ware's apartment. He took Ware into custody; ruled out Ware as a suspect in the robbery; conducted photographic line-ups in which Ham, the clerk from the Time Saver, and the clerk from the Sentry Motel all identified Green; and conducted a physical line-up in which Green was identified by Ham. Detective Heindel identified Green in court.
Joseph Sciarrini testified that he was employed at the Time Saver on General Meyer on July 10, 1991. Sciarrini became suspicious of a customer who purchased beer and cigarettes so he exited the store to observe the customer's car as it drove away and copied down the license number. Sciarrini testified that he identified Green from a photographic line-up as the customer. Ware was brought into the courtroom and Sciarrini said that Ware was not the person he identified.
It was stipulated that Dr. James S. Kadi, a head and neck surgery resident at Charity Hospital, was an expert in the field of diagnosing and treating head and neck injuries. Dr. Kadi testified that he treated Ham, who had been shot in the face below his left eye, at Charity Hospital on July 9, 1991. Ham was lucid and told Dr. Kadi that he had been shot in his car at a service station after someone placed a gun to his head and demanded money. Dr. Kadi found the obvious entrance wound, determined that there was no exit wound, and acted to control the bleeding. He performed surgery on the victim after X-rays were taken to locate the bullet. Dr. Kadi identified photographs taken during surgery. Dr. Kadi described the path taken and the damage caused by the bullet. According to Dr. Kadi, Ham nearly bled to death, would not have survived without surgery, and permanently lost his vision in his left eye. The skin was seared near the entrance wound indicating that the bullet had been fired from very close range. Dr. Kadi identified his notes and the medical records.
Detective Craig Rodrigue testified that he participated in Green's arrest. In response to Crime Stoppers information he found Green hiding in the bedroom closet of Green's stepmother's apartment. Green's stepmother appeared nervous and evasive but consented to the search of her apartment. Detective Rodrigue identified Green in court.
Bobby Pruitt was working at the Sentry Motel on July 10, 1991. Pruitt testified that a person he later identified from a photographic line-up as Green checked into the hotel for a week on that date with an American Express card. Pruitt learned the card was stolen when he attempted to charge another week to the card. Pruitt identified Green in court.
Troy Green Ware, Green's stepbrother, testified that the police came to his house, told him he was a robbery suspect, and forced him (by threatening him with being charged in the robbery or with probation violation and by force) to sign a statement implicating Green after advising him of his rights. Ware said that the police took from him a nine millimeter handgun, .22 caliber bullets, and sheets he had taken from the Sentry Motel. Ware told the police he had driven Green to a Time Saver and to the Sentry Motel. Ware testified alternatively *265 that the statement he made to the police was true, partially true, entirely false, and he said that he would have signed a false statement to avoid trouble. When shown the statement, Ware first identified his signature and then said that it wasn't his because he had signed some other document. Ware did not want to testify, did not want Green to go to jail, and was frightened and confused.
Edna Russo, Green's grandmother, testified that Green lived with her. She said Green was home when she arrived at approximately 8:45 p.m. on July 9, 1991. Green was watching videotaped soap operas when she went to sleep at approximately 11:30 p.m. that night. She said that Green could not have left because her doors were still locked the next morning and only she and her son Glen have keys to her house. According to Russo, Green does not own a car. She did not know Ware.
Detective Robert Haydel testified that Ware had been a suspect in the robbery. Detective Haydel advised Ware of his rights and Ware indicated that he understood these rights before making a statement. Detective Haydel said that Ware was not a suspect and Green became a suspect after Ware was questioned.
Appellant contends that the evidence was insufficient to support his conviction for attempted manslaughter because the State failed to prove that he had the specific intent to kill Roy Franklin Ham. In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Heck, 560 So.2d 611, 614-15 (La.App. 4th Cir.), writ denied, 566 So.2d 395 (La. 1990). The appellant was charged with attempted second degree murder but convicted of attempted manslaughter. In State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251-52 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court ruled that if the evidence supports a conviction of the crime charged, then a reviewing court may affirm the conviction by responsive verdict whether or not the evidence supports the responsive offense if the defendant failed to object timely to the instruction on the lesser responsive offense.
Attempted second degree murder encompasses an attempted killing without any specific intent to cause death or great bodily harm when the offender is engaged in the perpetration of an armed robbery. See La. R.S. 14:30.1(A)(2), 14:27. Defense counsel did not object to the responsive verdict. From a review of the record, there is no question that the State proved that Green shot Ham during the perpetration of an armed robbery. Accordingly, this assignment of error is without merit.
Regarding his sentences, appellant also contends that the trial judge erred in (1) imposing the attempted manslaughter sentence without benefit of parole, probation, or suspension of sentence; (2) imposing constitutionally excessive sentences; (3) imposing sentences not supported by sufficient reasons; and (4) imposing sentences intended to punish the appellant for electing to be tried by jury. There is no evidence that the appellant made a motion to reconsider the sentences. Code of Criminal Procedure article 881.1(D) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentenced may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
Accordingly, this Court will not consider appellant's second, third, and fourth contentions because failure to file a motion to reconsider precludes the defendant from raising a claim about the sentences on appeal. See, e.g., State v. Branch, 622 So.2d 828, 829 (La.App. 4th Cir.), writ denied, 627 So.2d 662 (La.1993). Appellant's first contention, however, may be reviewed by this Court as an error patent.
At the time of his sentencing, appellant should not have been sentenced to serve without benefit of parole, probation, or suspension *266 of sentence for attempted manslaughter. See La.R.S. 14:31(B), 14:27(D)(3). A panel of this Court, in State v. King, 93-2146, p. 8 (La.App. 4th Cir. 6/30/94), 639 So.2d 1231, 1236, ruled that this Court is precluded by Code of Criminal Procedure article 881.1(D) from reviewing as an error patent the illegal imposition of a sentence without benefit of parole, probation, or suspension of sentence if a defendant fails to raise the issue in a motion to reconsider the sentence:
Just as the reviewing court cannot review the issue where the state fails to specifically raise the particularized issue in an objection at sentencing or on a motion to reconsider sentence, the reviewing court is precluded from reviewing the issue where the defendant fails to raise the particularized issue with respect to a sentence being served with parole, probation or suspension of sentence.
The panel's reliance on Article 881.1 in the context of a sentence illegal on its face was misplaced. An illegal sentence is no sentence at all. State v. Johnson, 220 La. 64, 55 So.2d 782 (1951). Thus, Article 881.5 authorizes a trial judge to correct an illegal sentence at any time:
On motion of the state or the defendant, or on its own motion, at any time, the court may correct a sentence imposed by that court which exceeds the maximum sentence authorized by law.
and Article 882 authorizes an appellate court to correct an illegal sentence on review:
A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and prohibition.
Moreover, the concern for equality of State and defendant, expressed in King, was also misplaced. Their unequal treatment is motivated by the potential chilling effect upon a person's right to appeal, which is simply not a concern that applies to the State. Cf. State v. Fraser, 484 So.2d 122 (La.1986). Pursuant to internal rules of this Court, the panel submitted this issue to the Court en banc, which voted 10-2 to overrule State v. King as it regards errors patent review (Barry, Byrnes, JJ., dissenting). Accordingly, appellant's sentence for attempted manslaughter is amended to delete the requirement that he serve this sentence without benefit of parole, probation, or suspension of sentence, and this sentence is affirmed as amended. A review of the record for errors patent reveals no others.
For the foregoing reasons, the convictions are affirmed, the sentence as a second offender for armed robbery is affirmed, and the sentence for attempted manslaughter is amended to delete the requirement that he serve this sentence without benefit of parole, probation, or suspension of sentence, and this sentence is affirmed as amended.
BARRY, Judge, dissents with reasons.
The majority ignores the mandate of the legislature.
State v. King is applicable.
BYRNES, Judge, dissents with reasons.
I respectfully dissent with respect to the ruling concerning an errors patent review.
LSA-C.Cr.P. art. 881.1(D) (effective January 31, 1992) states:
D. Failure to make or file a motion to reconsider sentence or include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. [Emphasis added.]
When a motion to reconsider sentence is not filed, the appellate court is specifically precluded from reviewing the issue of excessive sentence. Further, the legislature used the word "shall" to mandate that review of an excessive sentence is explicitly precluded without a motion to reconsider sentence. The last phrase in C.Cr.P. art. 881.1(D) notes that the state or defendant cannot urge any *267 ground not raised in the motion on appeal or review.
LSA-C.Cr.P. art. 920 provides:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors, and
(2) An error that is discoverable by a mere inspection of the pleadings and without inspection of the evidence.
Prior to the effective date of C.Cr.P. art. 881.1(D), no motion to reconsider sentence was necessary for appellate review of errors patent under C.Cr.P. art. 920. Now, C.Cr.P. art. 881.1(D) further limits review of all excessive sentences, which includes errors patent.
Furthermore, the legislature did not insert the word "shall" but used the permissive word "may" in LSA-C.Cr.P. art. 881.5, which provides:
On motion of the state or defendant, or on its own motion, at any time, the court may correct a sentence imposed by that court which exceeds the maximum sentence of the commission. [Emphasis added.]
The legislature again inserted permissive language in using the word "may" rather than "shall" in LSA-C.Cr.P. art. 882(A), which states:
A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. [Emphasis added.]
In C.Cr.P. art. 882(A), the legislature also included the words "on review". In other words, the appellate court may correct a sentence on review, including errors patent; however, pursuant to C.Cr.P. art. 881.1(D), an error of excessive sentence cannot be reviewed where no motion to reconsider sentence was filed.
Although the legislature intended that all claims concerning excessive sentences (including errors patent) cannot be reviewed without a motion to reconsider sentence under C.Cr.P. art. 881.1(D), the defendant may have a claim of ineffective assistance of counsel, which may be raised by application for post conviction relief if filed timely within three years after the conviction is final pursuant to LSA-C.Cr.P. art. 930.8 (effective October 1, 1990). The legislature promulgated C.Cr.P. art. 930.8 which also limits review of post conviction claims.
Accordingly, I would not overrule State v. King, 93-2146 (La.App. 4 Cir. 6/30/94), 639 So.2d 1231.
BARRY and BYRNES, JJ., dissenting with reasons from the overruling of State v. King.