Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,272-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                         Appellee

versus

KEVIN LENARD THOMPSON                      Appellant

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 2023-F090

Honorable Will Barham, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

PENNY W. DOUCIERE                     Counsel for Appellee
District Attorney

MOLLY M. CLEMENT
Assistant District Attorney

* * * * *

Before COX, THOMPSON, and ELLENDER, JJ.

**COX, J.**

This criminal appeal arises from the Fifth Judicial District Court, West Carroll Parish. Defendant, Kevin Lenard Thompson ("Thompson"), was convicted of two counts of possession of a Schedule II CDS (less than 28 grams), in violation of La. R.S. 40:967(C), and one count of possession in a drug free zone, in violation of La. R.S. 40:981.3(A)(1).

Thomspon was sentenced to 10 years at hard labor without benefit of parole, probation, or suspension of sentence, each for counts one and two. He was further sentenced to 7 ½ years at hard labor without benefits and a $5,000 fine, for count three; each sentence was to be served consecutively. For the following reasons, Thompson's convictions are affirmed; however, his sentences are vacated and remanded for resentencing.

## FACTS

Surveillance video from Corner Market Nursery in Oak Grove, Louisiana revealed that on June 16, 2023, a man, who was later identified as Thompson, was seen entering the parking lot of the store and parking his vehicle. Thompson was then seen exiting the vehicle, dropping a bag on the ground, and after less than a minute, returning to his truck and leaving. A store employee, Summer Wolf ("Wolf"), spotted the bag and gave it to the store's owner, Breanne Bancroft ("Bancroft"), because she believed the bag contained narcotics. Bancroft then contacted law enforcement.

The bag and a copy of the store's surveillance video were provided to Officer Malcolm Miles ("Officer Miles"), who then identified Thompson in the video. The bag was later discovered to have contained both cocaine and hydrocodone. Officer Miles also determined that the bag was located in the

vicinity of Oak Grove High School, a drug free zone. Thompson was arrested the following day.

On July 20, 2023, Thompson was charged by bill of information with three counts of possession with the intent to distribute a Schedule II CDS and one count of possession in a drug free zone. On February 29, 2024, the State filed its notice of intent to use Thompson's prior conviction from September 2019, where he was charged with eight counts of distribution of Schedule II CDS under La. R.S. 40:982, for sentence enhancement. The State later filed an amended bill of information, changing Thompson's first three counts to possession of a Schedule II CDS greater than two grams but less than 28 grams.

Jury trial commenced March 4, 2024, wherein the following testimony was presented:

First, Bancroft testified she was the owner of Corner Market Nursery, an animal and feed store in Oak Grove, Louisiana. Bancroft explained that on June 16, 2023, her employee, Wolf, brought her a bag found in the store parking lot. Bancroft stated that when she looked in the bag, she saw what appeared to be pills, and a "white substance [that] looked like drugs," so she reviewed the store surveillance to see where Wolf found the bag and then contacted the police. Bancroft testified that her store has seven surveillance cameras, with three cameras directed at the southeast, southwest, and northwest areas to cover the entire span of the parking lot.

Bancroft then identified the surveillance video from June 16, 2023, and identified the various angles around the store; the video was then played for the jury. In viewing the video, Bancroft testified that she did not know

2

the man seen on the video, and at no point did the man ever come into the store, let alone did he purchase anything.

Next, Wolf testified that she was employed by Bancroft at Corner Market Nursery as a multi-use employee, responsible for loading, secretarial duties, and filling in as a cashier. Wolf stated that on June 16, 2023, she was helping a customer load items into their car when she accidentally kicked a bag in the parking lot. Wolf stated that when she inspected the bag, it was filled with what appeared to be drugs in sandwich bags. Wolf explained that she immediately took the bag to Bancroft. She then identified pictures of the contents of the bag she found. On cross-examination, Wolf clarified that when she found the bag, there were no other items in the area, and that inside the bag were smaller bags with what she believed were drugs.

Officer Miles, of the Oak Grove Police Department, then testified that in addition to his duties as an officer, he also serves as a school resource officer. He stated that on June 16, 2023, he received a complaint that a suspicious person left a bag containing drugs in the parking lot of Corner Market Nursery. Officer Miles testified that when he arrived at the store, Bancroft provided him with the bag that was discovered in the parking lot and the store's surveillance video. Officer Miles stated that in viewing the video, he was able to identify the man in the video as well as the license plate on the truck the man was seen driving. He explained that after running the license plates, registration confirmed that Thompson was the owner of the vehicle.

Officer Miles identified Thompson in open court and on the surveillance video. Officer Miles confirmed that he could see Thompson dropping a bag in the parking lot. He then reviewed pictures taken of the

contents of the bag and stated that after testing, the items found in the bag were confirmed to be cocaine and hydrocodone pills. Officer Miles then testified that both a measurement from Google Maps and his personal use of a measuring wheel[1] confirmed that Corner Market Nursery, where the drugs were found, was located within 1,247 feet of Oak Grove High School, which is a drug free zone. Officer Miles explained this was significant because contraband cannot be within 2,000 feet of a drug free zone, like a school.

On cross-examination, Officer Miles testified that he did not test the bag or its contents for fingerprints because the surveillance video showed who had the bag. He further stated that he was unaware if anyone else was in the vehicle with Thompson on the day in question and acknowledged Thompson has a twin brother. Officer Miles admitted that Thompson did not return to the store to retrieve the bag, and when Thompson was arrested, no drugs were found on his person. On redirect, Officer Miles explained that he had known Thompson and his twin brother his entire life and noted that Thompson and his twin are not identical.

Before the close of testimony, the State made an oral motion to amend the bill of information to correct the Schedule II CDS for count two from methamphetamine to cocaine. After the trial court denied the motion, the State dismissed count three. The jury unanimously found Thompson guilty as charged on the remaining three charges: namely, two counts of possession of a Schedule II CDS (less than 28 grams), in violation of La. R.S. 40:967(C), and one count of possession in a drug free zone, in violation of La. R.S. 40:981.3(A)(1). The State initially filed a petition for habitual

_____

[1] Officer Miles specified that the distance from the measuring wheel was 1,322 feet from Oak Grove High School to Corner Market Nursery.

4

offender sentencing; however, the petition was later dismissed and the State waived its right to pursue habitual offender charges.

Sentencing was held on May 1, 2024, wherein the trial court acknowledged that Thompson's sentence was subject to La. R.S. 40:982 for a subsequent or second offense. The trial court then noted that it extensively reviewed the art. 894.1 factors and reviewed Thompson's PSI, noting his history of drug convictions, and failure to adhere to the requirements of his probation and parole. Given this, the trial court found that Thompson was in need of correctional treatment or a custodial environment, and expressed that Thompson, in light of health concerns regarding his kidneys, be given all measures that can effectively be provided to him.

The trial court, however, also expressed its sentiments that a lesser sentence, given Thompson's past, would deprecate the seriousness of the offenses committed. The trial court then sentenced Thompson to 10 years at hard labor without benefit of parole, probation, or suspension of sentence each for both counts one and two, and 7 ½ years at hard labor without benefits and a $5,000 fine, for count three, with each sentence to be served consecutively. Thompson subsequently filed a motion for reconsideration on May 14, 2024, which was denied. This appeal followed.

## DISCUSSION

**Assignment of Error 1**

By his first assignment of error, Thompson argues that the State failed to prove beyond a reasonable doubt that he was guilty of two counts of possession of a Schedule II CDS, or that he possessed drugs in a drug free zone.

5

Specifically, Thompson argues that the State was required to show that he knowingly or intentionally possessed a Schedule II CDS; however, the evidence presented, namely the video surveillance from Corner Market Nursery, was insufficient to show Thompson was even aware he was in possession of drugs. Thompson argues that the video only shows a bag dropping as he exited his truck, and at no point is he seen attempting to pick the bag up or returning at any point to look for or retrieve the bag. Thompson maintains that his actions are consistent with someone who is unaware drugs are in their possession. Moreover, Thompson argues that the State failed to identify that the bag was "linked" to him through either DNA or fingerprint analysis.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L.Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797. This standard, now codified in La. C. Cr. P. art. 821, does not afford appellate courts with a means to substitute its own appreciation of the evidence for that of the fact finder. *Steines, supra.*

The Jackson standard is applicable to cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When

the direct evidence is thus viewed, the facts established by the direct evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127. If a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *Broome, supra*; *State v. Gipson*, 45,121 (La. App. 2 Cir. 4/14/10), 34 So. 3d 1090, *writ denied*, 10-1019 (La. 11/24/10), 50 So. 3d 827.

Appellate courts neither assess the credibility of witnesses nor reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court affords great deference to the trier of fact's decision to accept or reject the testimony of a witness in whole or in part. *State v. Jackson*, 53,497 (La. App. 2 Cir. 5/20/20), 296 So. 3d 1156. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2997 (La. 6/27/03), 847 So. 2d 1255.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14),

153 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 5/9/07), 956 So. 2d 769.

In the present case, Thompson was convicted, in part, of two counts of possession of cocaine and hydrocodone, Schedule II CDS drugs, in violation of La. R.S. 40:967(C).

It is unlawful for any person to knowingly or intentionally possess a Schedule II controlled dangerous substance unless it was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in La. R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by the statute. La. R.S. 40:967(C). To convict a defendant of possession of a CDS, the State must prove that the defendant knowingly possessed an illegal drug. *Broome, supra*; *State v. Murphy,* 09-432 (La. App. 5 Cir. 11/24/09), 28 So. 3d 496, *writ denied,* 10-0016 (La. 6/25/10), 38 So. 3d 334.

Possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. "Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *Broome*, *supra*. The State need not prove the defendant actually possessed the drugs, as evidence of constructive possession is sufficient. *State v. Simon*, 51,778 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1149, *writ denied*, 18-0283 (La. 11/5/18), 255 So. 3d 1052.

Constructive possession is established by evidence that the drugs were within the defendant's dominion and control and that the defendant had knowledge of their presence. *State v. Simon, supra.* Guilty knowledge is an essential element of possession of contraband and can be inferred from the

8

circumstances. *State v. Toups*, 01-1875 (La. 10/15/02), 833 So. 2d 910; *State v. Simon, supra.* A defendant's mere presence in an area where drugs are located or association with one possessing drugs does not constitute constructive possession. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So. 2d 923. However, proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. *State v. Richardson*, 18-717 (La. App. 5 Cir. 9/4/19), 279 So. 3d 501, *writ denied*, 19-01722 (La. 7/2/20), 297 So. 3d 764.

Courts use several factors to determine whether a defendant exercised dominion and control to constitute constructive possession, including: (1) the defendant's knowledge that drugs were in the area, (2) the defendant's relationship with other persons found in actual possession, (3) the defendant's access to the area where the drugs were found, (4) evidence of drug paraphernalia or of recent drug use, and (5) the defendant's physical proximity to the drugs. *State v. Simon, supra.* Further, a defendant may be found to have been in joint possession even if the drug is in the physical custody of a companion if he willfully and knowingly shares with the other the right to control of it. *State v. Moore*, 48,492 (La. App. 2 Cir. 11/20/13), 128 So. 3d 608, 612, *writ denied*, 13-3003 (La. 5/3014), 140 So. 3d 1175.

On appeal, Thompson argues that the State failed to sufficiently show he knowingly possessed drugs. He maintains that his actions, the failure to either pick the bag up, return to retrieve the bag, or look for the bag after he left the store, were consistent with someone who was unaware drugs were in their possession. Moreover, Thompson argues that the State failed to link the bag of drugs to him either through DNA or fingerprint evidence or show that he even knew the drugs were present in the vehicle. The State,

9

however, presented the narrative that Thompson's actions were consistent with someone who made a "drug drop." We agree.

Upon review of the surveillance video, it can be seen that the parking lot was free of any debris or objects prior to Thompson's arrival. It is only after Thompson exits his vehicle, briefly walks toward the store, and then leaves, is the small bag-like object seen in the parking lot. We note that during this time, no other person or vehicle goes through the area except for Thompson. The bag did not manifest itself from nothing; Thompson either dropped the bag, or it fell from his vehicle. Regardless, it is evident the drugs were in Thompson's vehicle, located on the driver's side, and were, therefore, within his control and dominion.

Moreover, Officer Miles identified Thompson from the video, established Thompson was the owner of the vehicle, and no other person was ever identified to be in the vehicle during that time. Therefore, after a thorough examination of the record and viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence for any rational trier of fact to convict Thompson of all three offenses.

**Assignments of Error 2 & 3**

By his final assignments of error, Thompson argues that the trial court erred in imposing maximum sentences for each count, and ordering that each sentence be served consecutively and without benefit of parole, probation, or suspension of sentence. Thompson further argues that the trial court erred in denying his motion to reconsider sentence because of the undue hardship that would be placed on Thompson's health and his family, and concurrent sentences would have been more appropriate because the events in this case arose from one transaction.

10

Appellate review of sentences for excessiveness is a two-prong inquiry. Under the first prong, the record must show that the trial court considered the factors in La. C. Cr. P. art. 894.1. The primary goal of La. C. Cr. P. art. 894.1 is for the court to articulate the factual basis for the sentence imposed, and not simply mechanical compliance with its provisions. However, if the record reflects that the trial judge adequately considered the guidelines of the article, then he is not required to list every aggravating or mitigating circumstance. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332.

Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. DeBerry*, *supra*. In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones,* 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. There is no requirement that specific matters be given any particular weight during sentencing. *State v. DeBerry*, *supra*; *State v. Shumaker*, 41,547 (La. App. 2 Cir. 12/13/06), 945 So. 2d 277, *writ denied*, 07-0144 (La. 9/28/07), 964 So. 2d 351.

Next, under the second prong of the analysis, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless

infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Hollins*, 50,069 (La. App. 2 Cir. 8/12/15), 174 So. 3d 710.

Moreover, when determining whether a defendant's sentence is excessive, a reviewing court should compare the defendant's punishment with the sentences imposed for similar crimes by the same court or other courts. *State v. Parks*, 54,888 (La. App. 2 Cir. 12/14/22), 352 So. 3d 166.

A trial court maintains wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of such discretion, a sentence will not be set aside as excessive. Upon review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Weaver*, *supra; State v. Davis*, 50,149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200.

In the present case, Thompson acknowledges the State waived its right to pursue habitual offender charges, and that it intended to enhance his sentence pursuant to La. R.S. 40:982. In doing so, the State relied upon Thompson's previous conviction from September 2019, in which he pled guilty to "distribution of Schedule I CDS, distribution of Schedule II CDS, four counts, possession with intent to distribute a Schedule I CDS, possession with intent to distribute a Schedule II CDS, two counts. . . and was sentenced to eight years at hard labor on each count."

12

Thompson was convicted of two counts of possession of a Schedule II CDS (less than 28 grams), in violation of La. R.S. 40:967(C)(2), and one count of possession of a Schedule II CDS in a drug free zone, in violation of La. R.S. 40:981.3(A)(1). Thompson was ultimately sentenced to 10 years at hard labor without benefit of parole, probation, or suspension of sentence, for counts one and two. Thompson was further sentenced to 7 ½ years at hard labor without benefits and a $5,000 fine, for count three, with each sentence to be served consecutively.

Possession of a Schedule II CDS, pursuant to La. R.S. 40:967(C), is punishable with or without hard labor for not more than five years, and the defendant may be ordered to pay a fine of not more than $5,000. Further, La. R.S. 40:982(A) provides that "any person convicted of any offense under this part, if the offense is a subsequent offense, shall be sentenced to a term of imprisonment that is twice that otherwise authorized or to payment of a fine that is twice that authorized or both." Therefore, under this statute, a second conviction of possession of a Schedule II CDS is punishable at ten years with or without hard labor, and, in addition, the trial court may order a fine of not more than $10,000. Moreover, La. R.S. 40:981.3 provides:

> D. (1) Whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970.
>
> (2) A sentence imposed for a violation of the provisions of this Section shall not be subject to parole, probation, or suspension of sentence to the extent that the minimum sentence for a violation of a felony provision of R.S. 40:966 through 970 is not subject to parole, probation, or suspension of sentence.

Although Thompson received the maximum sentences for each offense, there is no question that the sentences fell within the statutory range

13

for each offense.  In this case, the trial court reviewed Thomspon's PSI and the sentencing guidelines set forth in La. C. Cr. P. art. 894.1, and noted that among other offenses, Thompson previously pled guilty to possession of Schedule II CDS with intent to distribute in 2011, and pled guilty again to one count of distribution of a Schedule I CDS, one count of possession with intent to distribute a Schedule I CDS, two counts of possession with intent to distribute a Schedule II CDs, and four counts of possession of a Schedule II CDS.

The trial court reviewed Thompson's personal history, read the statement Thompson's aunt submitted on his behalf, and the court even acknowledged that Thompson had been on dialysis since he was 22.  However, the court found that there was an undue risk Thompson would commit another crime, and was in need of correctional treatment, and a lesser sentence, given his criminal history, would deprecate the seriousness of these offenses.  Given this and the thoroughness of the trial court's review of the art. 894.1 factors, we cannot say that the trial court erred in imposing the 10 year sentences for counts one and two, and the 7 ½ years for count three.

However, Thomspon also argues that the trial court erred in imposing his sentences to be served consecutively rather than concurrently, and without benefits.

First, with respect to whether multiple sentences should be served concurrently or consecutively, La. C. Cr. P. art. 883 provides in part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.  Other sentences of imprisonment shall

> be served consecutively unless the court expressly directs that some or all of them be served concurrently.

Trial courts have limited discretion to order that multiple sentences can be served concurrently or consecutively. *State v. Allen*, 52,318 (La. App. 2 Cir. 11/14/18), 260 So. 3d 703; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836. Concurrent sentences that arise from a single course of conduct are not mandatory; likewise, consecutive sentences under those circumstances are not necessarily excessive. *State v. Nixon*, *supra*; *State v. Harris*, 52,663 (La. App. 2 Cir. 8/14/19), 277 So. 3d 912.

However, a judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. *Id.* Accordingly, when consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *Id.*

The trial court in this case thoroughly reviewed the art. 894.1 factors in sentencing Thompson and carefully reviewed Thompson's PSI and criminal history. However, in ordering that Thompson's sentences should be served consecutively, the trial court provided:

> Each and every one of these sentences due to the nature of these offenses, the places-the place that they happened, the defendant's repeated offenses in this particular case, the Court does feel that it is most appropriate even though. . . they did all occur at the same time, I think that they are separate and distinct in a number of ways, and I believe that consecutive sentences are called for and appropriate in this particular case.

The trial court only briefly acknowledges that Thompson's activities all formed part of a single course of conduct and determined that "they are separate and distinct in a number of ways," but provides no further explanation of the distinct nature of Thompson's actions. In this Court's view, Thompson's actions are not so separate and distinct as to justify consecutive sentences, and the trial court did not adequately address the fact that Thompson's activities all formed part of a single scheme or plan.

Thompson's three convictions were not crimes of violence and arose out of a single course of conduct within a very short period of time at one location: Thompson dropped a bag of drugs in the parking lot of Corner Market Nursery, which was located in the vicinity of a drug free zone. This Court is of the opinion that while Thompson has a criminal history of possession, this does not change the single nature of the event, which reflects that the sentences should have been ordered to run concurrently rather than consecutively. Thus, we find that the presumption in favor of concurrent sentences applies in this case.

Moreover, in this case, in sentencing Thompson, the trial court specified that each sentence would be served without benefit of probation, parole, or suspension of sentence. While Thompson did not raise the issue in his motion to reconsider sentence, and no contemporaneous objection was

16

made to the sentence, this Court may review the issue as error patent.[2]  A

conviction under La. R.S. 40:967(C)(2) provides that a defendant "shall be

imprisoned, with or without hard labor, for not less than one year nor more

than five years and, in addition, may be sentenced to pay a fine of not more

than five thousand dollars."  La. R.S. 40:981.3(A)(1) further provides that:

> D. (1) Whoever violates a provision of this Section shall be
> punished by the imposition of the maximum fine and be
> imprisoned for not more than one and one-half times the
> longest term of imprisonment authorized by the applicable
> provisions of R.S. 40:966 through 970.
>
> (2) A sentence imposed for a violation of the provisions of this
> Section shall not be subject to parole, probation, or suspension
> of sentence to the extent that the minimum sentence for a
> violation of a felony provision of R.S. 40:966 through 970 is
> not subject to parole, probation, or suspension of sentence.

Further, La. R.S. 40:982 provides:

> Any person convicted of any offense under this Part, if the
> offense is a second or subsequent offense, shall be sentenced to
> a term of imprisonment that is twice that otherwise authorized
> or to payment of a fine that is twice that otherwise authorized,
> or both.  If the conviction is for an offense punishable under
> R.S. 40:966(B), 967(B), 968(B), or 969(B), and if it is the
> offender's second or subsequent offense, the court may impose,
> in addition to any term of imprisonment and fine, twice the
> special parole term otherwise authorized.

Although the trial court imposed each sentence to be served without

benefits, the provisions of the applicable statutes do not support such an

imposition, and Thompson was not adjudicated as a habitual offender under

La. R.S. 15:529.1, to justify the restriction of benefits.  Therefore, we find

that Thompson's sentences should not have been imposed without benefits,

except to the portion allowable by law.

---

[2] See, *State v. Green,* 93-1432 (La. App. 4 Cir. 4/17/96), 673 So.2d 262.

La. C. Cr. P. art. 881.4 states that if an appellate court finds that a sentence must be set aside on any ground, the court shall remand for resentencing by the trial court.  The appellate court may give direction to the trial court concerning the proper sentence to impose.  *Id.*  Accordingly, Thompson's sentence is vacated and set aside for the reasons stated hereinabove and remanded to the trial court for resentencing in accordance with this opinion.

## CONCLUSION

For the above reasons, Thompson's convictions are affirmed.  The sentences are vacated, and this case is remanded to the trial court with instructions.

**CONVICTIONS AFFIRMED; SENTENCES VACATED AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**